**MEADOWBROOK HOMES, INC., an Ohio Corporation, Plaintiff, v. INTERNATIONAL HOD CARRIERS AND BUILDING LABORERS UNION OF AMERICA, etc., Defendants.**

Common Pleas Court, Hamilton County.

No. 139235.   Decided September 4, 1953.

Robert T. Keeler, Nelson Schwab, Jr., Joseph H. Head, Cincinnati, for plaintiff.

Benjamin Gettler, Jonas B. Katz, Cincinnati, for International Hod Carriers, International Teamsters, John Travis, George Starling and James Webb, defendants.

William R. Matthews, Cincinnati, for Cement Finishers and J. E. Hines, defendants.

Harold R. Latimer, Cincinnati, for Building Trades Council and Frank C. Vincent, defendants.

### OPINION

Per CURIAM.

This matter is before the court on the application for a temporary restraining order.

The plaintiff, Meadowbrook Homes, Inc. is a corporation, and the defendants The International Hod Carriers and Building Laborers Union of America Local 265, Cement Finishers Union

Local 524, International Teamsters, Truck Drivers, Chauffeurs and Helpers Union of North America Local 100 and the Cincinnati Building Trades Council are unincorporated associations, the first three mentioned defendants being trade unions and the fourth an association of trade unions; John Travis, James E. Hines and George Starling, who are the business agents and representatives respectively of the three unincorporated associations known as labor unions; James Webb, and Frank C. Vincent the secretary of the Building Trades Council.

In this case the plaintiff claims, and the evidence shows, that it is a corporation organized under the laws of the state of Ohio, and that it is engaged in a project of building homes in the city of Cincinnati, county of Hamilton and state of Ohio. It is asserted that the defendants, individually and collectively as members of trade unions, have caused the bannering of the plaintiff's project and have caused a work stoppage on the project.

The defendants claim first that the plaintiff is not a bona fide entity, and second that a man named Collins is a subcontractor on plaintiff's project, and that the grievance is in reality between these unions and Collins. The defendants do not claim that they have any grievance against Meadowbrook Homes, Inc.

At the hearing the defendants introduced some evidence that this picketing was being done against Collins, and not against Meadowbrook Homes, Inc. The most persuasive bit of evidence on that subject is the wording of the banners themselves. This wording is set forth in the petition, and during the course of the evidence the defendants were asked whether or not the language in the petition correctly set forth the wording of those banners, and it was admitted in open court that they did. One of the banners stated: "Cement masons employed on this project are not members of the Cement Masons Union Local 524 AFL"; another banner stated: "Does not employ members of Truck Drivers Union Local 100 AFL." A third banner stated: "Men working on this job are not members of the International Hod Carriers and Building Laborers Union Local 265 AFL." Those banners show conclusively, in the opinion of the court, that this picketing was not directed against Collins alone, but was intended to accomplish the exact purpose it did accomplish, and that was to cause a work stoppage on this entire project.

The question involved here is not new in this state. The Supreme Court of Ohio has spoken on the subject on a number of occasions; and when the Supreme Court speaks on a sub-

ject the decisions of courts lower in rank than the Supreme Court are not persuasive.

In this class of cases there are always a number of Constitutional questions involved—Constitutional rights—and in this case there are several such rights involved. The Constitutional right of free speech is involved: the Constitutional right of men to work whether they do or do not belong to trade unions is involved: the right of an employer to employ men who do not belong to unions as well as those who do belong to unions, all of one kind or the other is involved.

This is not a labor dispute under the Taft-Hartley Act. The court is fully persuaded that the Taft-Hartley Act was not an exclusive remedy in a case of this nature. True, the plaintiff would have a right to base its action upon the Taft-Hartley Act, but would also have a right to base its action, as it did here, under the law of the state in which the case arose. If a case is based on the Taft-Hartley Act then the question of whether the federal courts have exclusive jurisdiction is always before the court; but where a case is based upon state law as is here done, there is no question in the court's mind that a state court has equal jurisdiction with the federal courts in such case.

These Constitutional rights of which I have spoken are all of equal force and effect, and the right of free speech and freedom of the press under which this bannering might possibly be done then raises the question as to what is the purpose of the bannering.

It is not necessary to decide in this case whether or not, if a job is bannered purely and simply for the purpose of giving to the public the benefit of a trade union's grievance, that sort of thing can and should be enjoined because in this case the evidence is, by some of the defendants themselves, that the purpose of bannering this project was to cause, or attempt to cause the plaintiff to cease doing business with the man Collins. That purpose is clearly shown, in the opinion of the court, by the wording of the banners. The result of that action was a work stoppage.

The polestar case in the state of Ohio on this subject is the LaFrance case which is reported in **108 Oh St**, and on **page 95** the court uses the following language—I do not want to misquote, so am going to read it:

"Equality of justice demands that in any controversy the rights of all parties be scrupulously maintained. The right of the workmen to be employed, irrespective of union membership, must be maintained; the right of the employer to conduct his business without illegal interference must be upheld;

and legal means employed by strikers must not be curtailed."

The question resolves itself therefore, into whether or not this was a legal right of those who have a grievance with labor.

The Supreme Court of Ohio in its last pronouncement on this subject has set at rest that question; but before coming to that, probably the most discussed case in the State of Ohio upon this subject is that of **Crosby v. Rath,** reported in **136 Oh St, 352, 16 O. O. 496.** In that case the Supreme Court of Ohio said:

"The right to contract, the right to do business and the right to labor freely and without restraint are all Constitutional rights, equally sacred, and the privilege of free speech cannot be used to the exclusion of the other Constitutional rights, nor as an excuse for unlawful activities in interference with another's business."

In this Crosby case a situation existed as between an employer and a trade union, in which the trade union was seeking by picketing and bannering, and the use of force and violence, to cause that employer to insist that his employees be unionized, and in the event they were not, to discharge them and have only union employees. The Supreme Court in that case held that that sort of picketing and that sort of action was unlawful, and was not protected by the Constitutional guaranty of free speech and freedom of labor.

The last pronouncement as I said of the Supreme Court of Ohio is found in **156 Oh St, page 541, 46 O. O. 460,** commonly known as the Anderson case. In that case the syllabus, or part of it, written by the court, in the opinion of this court fits the case before me like a glove. That was a case in which there was a dispute between a trade union and a sub-contractor and his employees. There was picketing in that case. The Supreme Court, in the third paragraph of the syllabus, which as you gentlemen know who are educated in the law, is the law of the case, stated as follows:

"Where a building trades union which has a labor dispute with one of several subcontractors on a construction job, pickets and banners the construction site for the purpose of inducing the craft employees of the general contractor to quit their employment in concert and thereby bring about a work stoppage on the entire construction job, all for the further purpose of influencing such general contractor to cause the discharge of the subcontractor with whom the union has the labor dispute such picketing and bannering constitute a secondary boycott."

As the court has stated, the controversy here, if there is a

controversy, is between Collins, a subcontractor, and these labor organizations. The defendants when their turn came, offered not one scintilla of evidence to show that they had any dispute whatever with Meadowbrook Homes, Inc. Their dispute, whatever it is or whatever it is worth, is with Collins; and when these unions picketed this job, and as has been testified for the purpose of causing Meadowbrook Homes, Inc. to discharge Collins and breach its contract with him, then their actions became entirely illegal, not protected by the Constitutional provision of free speech or freedom of the press, were an infringement on the rights of Meadowbrook and a court of equity is under the obligation to enjoin such actions.

As to one of the defendants, The Cincinnati Building Trades Council, the only evidence is that it is an association of the trade unions in this city and in the northern part of the state of Kentucky; that it does not call strikes: does not banner any place, but that' the different unions meet at its headquarters, and from the evidence the court assumes that matters are discussed that are to their mutual benefit.

The court does not feel that there has been any substantial evidence to warrant the issuance of a temporary restraining order against the Cincinnati Building Trades Council—and I am saying that with the knowledge that one of the defendants who is a business agent for one of the unions stated he got permission from the Building Trades Council to banner the plaintiff's project. The evidence clearly discloses that the person at the Building Trades Council with whom he talked was not authorized to bind the Trades Council.

The judgment of the court therefore is that a temporary restraining order will be issued against the International Hod Carriers and Building Laborers Union of America, the Cement Finishers Union, International Teamsters, John Travis, James E. Hines. George Starling and James Webb, to restrain them from any further picketing or interfering with this project, and that that injunction will become effective upon the giving of a bond in the sum of one thousand dollars.

The court will not dismiss the Building Trades Council nor Frank C. Vincent as defendants in the suit, but the court declines to issue any temporary restraining order against them.

An entry may be prepared in accordance with the findings of the court.